UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

LUCY FONSECA                                                    CIVIL ACTION

VERSUS                                                          NO: 20-1242

STANDARD INSURANCE CO.                                          SECTION: "A" (5)

## ORDER AND REASONS

Plaintiff, Lucy Fonseca ("Fonseca"), brought this action against Defendant, Standard Insurance Co. ("Standard"), for benefits payable under a long-term disability ("LTD") plan ("the Plan") sponsored by her former employer, Zachry Holdings, Inc. Fonseca contends that she is disabled from her own occupation as an insulator/insulation worker, a physically demanding construction industry job, and further that she is totally disabled and unable to work in any occupation. Fonseca's claimed disabilities are psoriatic arthritis, alopecia, photosensitivity, fibromyalgia, depression, anxiety, and migraine headaches. Standard denied Fonseca's application for LTD benefits after finding that some of her conditions were subject to the Plan's pre-existing condition exclusion and that others were non-disabling.

It is undisputed that the Plan constitutes an employee welfare benefit plan and that this case is governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*. On September 23, 2020, the Court granted the parties' joint motion to submit the case for decision based on the administrative record and to vacate the scheduling order and trial date. (Rec. Doc. 11, Order). The parties have stipulated that the review of Standard's benefits decision will be limited to consideration of the evidence in the administrative record, which consists of 2081 pages (Rec. Doc. 16), and their memoranda.

1

**I.**

According to Standard, the effective date of Fonseca's LTD coverage was October 1, 2017, based on a hire date of September 14, 2016. Because Fonseca's onset date of disability was June 8, 2018, which was less than 12 months after the LTD effective date of October 1, 2017 as determined by Standard,[1] Fonseca had to clear the Plan's Preexisting Condition exclusion.[2] The exclusion uses a 90-day "lookback" period starting from the LTD effective date—the applicable lookback period in this case would be July 3, 2017 to September 30, 2017, if October 1, 2017 is the correct LTD effective date. The specific condition for which Fonseca sought LTD benefits was psoriatic arthritis. (STND 2020-00839-001056). After reviewing Fonseca's medical records, Standard determined that Fonseca had received treatment for psoriasis, psoriatic arthritis, lupus, depression, alopecia areata and fatigue during the 90-day

---

[1] The applicable eligibility waiting period for LTD coverage is the first day of the calendar month following 1 continuous year as a Member. (STND 2020-00839-000006). Thus, if Fonseca was hired on September 14, 2016 and became a Member as of that date, then the first day of the calendar month following 1 continuous year as a Member would be October 1, 2017.

[2] The Plan's Preexisting Condition exclusion states:

> You are not covered for a Disability caused or contributed to by a Preexisting Condition or medical or surgical treatment of a Preexisting Condition unless, on the date you become Disabled, you have been continuously insured under the Group Policy for 12 months.

Preexisting Condition means a mental or physical condition:

    a. For which you have done any of the following:

      i.      Consulted a physician or other licensed medical professional;
      ii     Received medical treatment, services or advice;
      iii.    Undergone diagnostic procedures, including self-administered procedures;
      iv.    Taken prescribed drugs or medications;

    b. Which, as a result of any medical examination, was discovered or suspected;

at any time during the 90-day period just before the date your insurance becomes effective. (STND 2020-00839-000066).

period before her insurance became effective. Therefore, psoriatic arthritis was a preexisting condition under the Plan for which LTD benefits were excluded and the claim was denied. (STND 2020-00839-000806). Fonseca, through counsel, appealed the denial citing a new set of symptoms and new diagnoses around the time that she stopped working in June 2018. (STND 2020-00839-000903). According to her attorney, the disabling conditions most responsible for Fonseca's inability to work were actually the new conditions of fibromyalgia, plantar fasciitis, major depression, high blood pressure, polyarthralgia, and anxiety. (STND 2020-00839-000902). Also, certain medications that Fonseca began taking after the lookback period were drowsiness-inducing. (STND 2020-00839-000903).

As part of the administrative review of the initial decision, Standard had Fonseca's medical file reviewed by a physician consultant who is board-certified in rheumatology. (STND 2020-00839-000813). Standard upheld its initial determination that psoriatic arthritis was a preexisting condition. (STND 2020-00839-000813). Standard also found that the conditions of psoriasis, anthralgia/fibromyalgia, alopecia, and photosensitivity were preexisting conditions. (*Id.*). The consulting physician had determined that Fonseca had been seen and treated for psoriasis, psoriatic arthritis, alopecia, and photosensitivity during the lookback period. (*Id.*). The chart notes showed that Fonseca had reported arthralgias, specifically pain in her fingers, wrists, and hips during that period (*Id.*). Essentially the symptoms associated with the fibromyalgia diagnosis were the same as those reported during the lookback period. (STND 2020-00839-000814). Because the fibromyalgia diagnosis was based largely on the same symptoms for which Fonseca was treated during the lookback period, it was also determined to be a preexisting condition. (*Id.*). Simply describing reported symptoms by a new name or being prescribed new medications for those symptoms did not remove the condition from the preexisting condition exclusion. (*Id.*).

Standard did agree, however, that migraine headaches, depression, plantar fasciitis, and high blood pressure were not excludable as preexisting conditions. (STND 2020-00839-000813). But high blood pressure and plantar fasciitis were not discussed in the medical records until October 1, 2018, which was after Fonseca's LTD coverage had ended.[3] (STND 2020-00839-000815). Therefore, those conditions could only be considered if it were established that they prevented Fonseca from working as of the time that she ceased working. (*Id.*). Standard's Administrative Review Unit then returned Fonseca's file for further consideration of whether she would be entitled to LTD benefits based on her condition of migraine headaches.[4] (STND 2020-00839-000816).

Standard denied Fonseca's claim for disability due to migraine headaches. (STND 2020-00839-000802). Standard explained that there was insufficient medical documentation from which to conclude that Fonseca had any limitations or restrictions from migraine headaches such that they would prevent her from performing the Material Duties of her Own Occupation with reasonable continuity.[5] (*Id.*). Standard noted that while migraines had been mentioned in some of

---

[3] Fonseca has not alleged in her complaint that she is disabled due to either high blood pressure or plantar fasciitis.

[4] The remand letter also states that the file was being returned for further investigation of depression as a potentially disabling condition that was not preexisting. (STND 2020-00839-000809, 816). But elsewhere in the letter depression was mentioned as a condition reported to the medical providers during the lookback period. (STND 2020-00839-000811, 814). Standard called Fonseca's counsel to explain that the file was actually being reviewed to consider migraine headaches only. (STND 2020-00839-000879). Fonseca contends that it was procedurally improper for Standard's claims unit to narrow the scope of the review on remand.

[5] The Plan's definition of Disability states in relevant part:

A. Own Occupation Definition of Disability

During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

4

the rheumatology outpatient clinic notes, there was no documented history specific to migraines such as location or character of head pain, frequency, aura, triggering events, or associated symptoms, etc. Also there was no noted referral for a neurology consultation nor was there any documented effort to treat migraines. (*Id.*).

Fonseca, through counsel, appealed the denial and in doing so provided additional medical records for the purpose of demonstrating that migraines had been a significant problem for Fonseca and that she had in fact received treatment, including prescription medications, for migraine headaches. (STND 2020-00839-000870).

As part of the administrative review of the initial decision, Standard had Fonseca's medical file reviewed by a physician consultant who is board-certified in neurology. (STND 2020-00839-000792). The physician consultant indicted that Fonseca had reported headaches intermittently throughout the course of the available medical records but no associated specific neurologic examination abnormalities were noted, no cognitive deficits were documented, and no medication side effects were documented. (*Id.*). The physician consultant stated his opinion that

---

You are Disabled from your Own Occupation If as result of Physical Disease, Injury Pregnancy or Mental Disorder you are unable to perform with reasonable continuity the Material Duties of your Own Occupation …

Own Occupation means any employment, business, trade, profession, calling, or vocation that involves Material Duties of the same general character as the occupation you are regularly performing for your Employer when Disability begins. In determining your Own Occupation, we are not limited to looking at the way you perform your job for your Employer but we may also look at the way the occupation is generally performed in the national economy…

Material Duties means the essential tasks, functions, and operations and the skills, abilities, knowledge, training, and experience generally required by employers from those engaged in particular occupation that cannot be reasonably modified or omitted.

(STND 2020-00839-000055, 56).

The Own Occupation Period under the Plan is the first 24 months for which LTD benefits are paid. (STND 2020-00839-000017).

based on the available information, no limitations or restrictions, secondary to headaches/migraines were present or supported from June 7, 2018, and beyond. (*Id.*). He also stated that the records did not document or support limitations or restrictions secondary to rizatriptan, topiramate or Fioricet. (*Id.*).

Standard upheld its initial determination explaining that Fonseca's headaches/migraines were not of a severity to preclude her from working full time, with reasonable continuity, in her Own Occupation after June 7, 2018, and beyond the 180 day Benefit Waiting Period.[6] (STND 2020-00839-000792). Although Fonseca had a history of headaches dating back to at least December 2017, the office visit notes did not consistently describe the frequency or severity of the headaches. (STND 2020-00839-000793). The brain MRI in October 2018 was normal and did not document any findings associated with migraine headaches. (*Id.*). The records showed that Fonseca had never consulted a neurologist for headaches and all of the physical exams related to her headaches were normal. (*Id.*). At times Fonseca had reported improvement with medication. (*Id.*). Overall, Fonseca's headaches seemed to wax and wane. (*Id.*). Therefore, Fonseca did not meet the Own Occupation Definition of Disability as outlined in the Plan. (STND 2020-00839-000794).

Fonseca filed this civil action on April 20, 2020, to recover unpaid LTD benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) along with an award of attorney's fees and costs pursuant to 29 U.S.C. § 1332(g).[7] Fonseca alleged that she is disabled from her own occupation and that she is

---

[6] Benefit Waiting Period means the period you must be continuously Disabled before LTD benefits become payable. No LTD benefits are payable for the Benefit Waiting Period. (STND 2020-00839-000071).The Benefit Waiting Period under the Plan was 180 days. (STND 2020-00839-000017). Because Fonseca claimed an onset date of June 7, 2018, the 180 day Benefit Waiting Period was from June 8, 2018 through December 4, 2018.

[7] In her prayer for relief, Fonseca also included a demand for restitution, which is essentially a damages claim, and a declaration from the Court that Standard has no right of reimbursement

6

unable to work in any occupation.[8] (Rec. Doc. 1, Complaint ¶ 8). The specific disabling conditions that Fonseca pleaded are psoriatic arthritis, alopecia, photosensitivity, fibromyalgia, depression, anxiety, and migraines.[9] (*Id.*).

## II.

The first issue that the Court must resolve is the proper standard of review that applies in reviewing Standard's LTD benefits decision. While the parties have stipulated that the Court's review of Standard's benefits decision will be limited to consideration of the evidence in the administrative record, they do not agree on the standard of review that applies.

It is well-settled that a denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary

---

or set-off in this case. The claim for restitution is not supported by the record. As to Standard's right to reimbursement or set-off, the Court agrees with Standard's contention that the Plan's terms and conditions control.

[8] The Plan has two phases for LTD benefits. As explained in note 5 above, the first phase is the Own Occupation Period of 24 months, which begins after the 180 day Benefit Waiting Period expires. Assuming that the claimant remains disabled throughout that 24 month period, the next phase is the Any Occupation Period which runs from the end of the Own Occupation Period to the end of the Maximum Benefit Period. (STND 2020-00839-000017). The Any Occupation Definition of Disability is more onerous in that it requires *inter alia* that the claimant be disabled from all occupations not just her own. (STND 2020-00839-000056).

Fonseca's Own Occupation Period under the Plan would have been December 5, 2018 through December 4, 2020. Fonseca filed this civil action on April 20, 2020, which was well before the Own Occupation Period ended. Thus, Standard is correct in that even if this Court were to conclude that any of Fonseca's conditions satisfied the Own Occupation Disability definition based on the current record, the Court has no basis upon which to award benefits for the entire 24 month Own Occupation Period, although admittedly it would seem unlikely given the multitude of Fonseca's health problems, that she would be limitation free anytime before December 4, 2020, and therefore able to return to work. The Court would be in even less of a position to determine based on the current record that Fonseca met (meets) the definition of Any Occupation Disability.

[9] As Standard has pointed out, Fonseca included arguments in her briefing about the conditions of lupus, high blood pressure, adjustment disorder, and cognitive deficits, none of which were included in her complaint and therefore are not at issue in this civil action. While Fonseca included the condition of photosensitivity in her complaint, she did not address it in her briefing.

discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). The Plan has an Allocation of Authority provision that would seem to grant Standard discretionary authority to determine eligibility and entitlement to benefits, and to interpret and apply the terms of the Plan. (STND 2020-00839-000069, 70). Therefore, Standard takes the position that the abuse of discretion standard should apply, and that under that standard the Plan's benefits denial is to be given deference.

Fonseca points out, however—and it is undisputed—that the Plan was issued in Texas. (STND 2020-00839-000049). Discretionary clauses in insurance forms are prohibited under Texas law for policies issued *after* either February 1, 2011 (28 Tex. ADC § 3.1201(c) (applicable to disability policies)) or January 1, 2012 (Tex. Ins. Code § 1701.062). The Plan was issued effective January 1, 2011, (STND 2020-00839-000049), which was prior to both dates, so Standard contends that the prohibition should not apply to the Plan. But because the Plan was amended subsequent to the effective date of the prohibition—this point is undisputed—Fonseca urges the Court to consider and follow Judge Milazzo's decision in *Jacob v. Unum Life Insurance Co.*, No. 16-17666, 2017 WL 4764357 (E.D. La. Oct. 19, 2017). In *Jacob*, Judge Milazzo concluded that an ERISA policy issued in Texas was subject to the prohibition even though it had been *issued* prior to the prohibition's effective date because it was *amended* after June 1, 2011. *Id.* 2017 WL 4764357, at *4. Judge Milazzo relied on § 3.1201(d) of the Texas Administrative Code which states:

> For forms issued or delivered prior to the effective date of this subchapter that do not contain a renewal date, this subchapter applies on or after the effective date of any rate increase applicable to the form or any change, modification, <u>or amendment of the form occurring on or after June 1, 2011</u>.

28 Tex. Admin. Code § 3.1201(d) (emphasis added).

8

The Plan has been amended numerous times after June 1, 2011. The Court therefore concludes that application of § 3.1201(d) of the Texas Administrative Code compels de novo review in this case.[10]

De novo review of the denial decision means that the Court will make an independent determination of whether Fonseca is entitled to LTD benefits without giving any deference to Standard's decision to deny benefits. *Pike v. Hartford Life & Accid. Ins. Co.*, 368 F. Supp. 3d 1018, 1035 (E.D. Tex. 2019) (quoting *Gluth v. Fed. Home Loan Mortg. Corp. Long–Term Disability Plan*, No. 11-cv-1126, 2013 WL 246897, at *4 (E.D. Va. Jan. 17, 2013) *aff'd*, 548 Fed. Appx. 73 (4th Cir.2013)). A court that employs de novo review in an ERISA case "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Wise v. MAXIMUS Fed. Servs., Inc.*, 478 F. Supp. 3d 873, 877 (N.D. Cal. 2020) (quoting *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006)). The burden of proving entitlement to contractual benefits is placed on the claimant. *Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) (citing *Horton v. Reliance Standard Life Ins. Co.,* 141 F.3d 1038, 1040 (11th Cir.1998); *Farley v. Benefit Trust Life Ins. Co.,* 979 F.2d 653, 658 (8th Cir.1992)); See also *Gray v. Minnesota Life Ins. Co.*, No. CV H-19-4672, 2021 WL 861298, at *2 (S.D. Tex. Mar. 8, 2021) (citing numerous authorities). Thus, as Standard points out in its briefing, Fonseca must prove her entitlement to disability benefits within the meaning of the Plan.

The Court is likewise persuaded, however, that if Fonseca proves that she is disabled under the Plan, then Standard must prove the applicability of any Plan exclusion that it contends

---

[10] After *Jacob* the Fifth Circuit en banc decided *Ariana M. v. Human Health Plan of Texas, Inc.*, 884 F.3d 246 (5th Cir. 2018). The court declined to decide whether Texas's anti-delegation statute might be preempted by federal law, but assuming that it was not and that the policy's delegation of discretionary authority was invalided by operation of law, de novo review applies to both factual determinations and to interpretations of the policy's terms and conditions. *Id.* at 256.

negates coverage. *See Sabatino v. Liberty Life Assur. Co.*, 286 F. Supp. 2d 1222, 1232 (N.D. Cal. 2003).

**III.**

It is undisputed that Fonseca has significant health problems, both physical and mental, with multiple co-morbid conditions having been diagnosed at various times. Her job as an insulator/insulation worker was physically demanding work. (STND 2020-00839-001066, 67). Zachary Holdings, Fonseca's employer, advised Standard that Fonseca would have to be 100% restriction free in order to work at the jobsite. (STND 2020-00839-001031). Fonseca had limitations imposed by her physician due to psoriasis and psoriatic arthritis. (STND 2020-00839-001097). Fonseca received favorable determinations on both her short term disability claim, and her claim for life waiver of premium, the latter of which found her totally disabled for purposes of that policy, based on her conditions. (STND 2020-00839-001427). But as Standard correctly points out, Fonseca's claim for LTD benefits is governed by the terms and conditions of the Plan, which has a Preexisting Condition exclusion, the operation of which deprived Fonseca of LTD coverage for most of her conditions regardless of whether they were in fact disabling. Because Standard determined that all of Fonseca's conditions were preexisting, migraine headaches being the only exception, Standard did not determine whether any limitations associated with those other conditions, either individually or considered together, might have satisfied the Own Occupation Definition of Disability.

Thus, migraine headaches is the only condition that Standard evaluated "on the merits" for purposes of determining whether Fonseca was "unable to perform with reasonable continuity the Material Duties of [her] Own Occupation." (See note 5 above). And as explained above, Standard's conclusion, based on its neurologist's evaluation of the medical records, was that

10

Fonseca's headaches seemed to wax and wane; at times Fonseca had reported improvement with medication. (STND 2020-00839-000793, 94).

Fonseca points out that migraines/headaches are referenced in the medical record in multiple places, and that the medical visit notes in August, September, and October 2018 reflect that Fonseca reported to her healthcare providers that the headaches were getting worse and becoming more frequent. (STND 2020-00839-000194, 601, 663). Fonseca was prescribed Topamax and Maxalt for treating her migraines. (STND 2020-00839-000192).

Whether based on abuse of discretion review or de novo review, the Court is not persuaded that Standard's determination that the medical records do not support a finding that migraines alone constituted a disabling condition as of the June 8, 2018 onset date of disability. While it is true that Fonseca reported worsening headaches, the record does not establish that either the headaches themselves or any side effects from the medications prescribed for them constituted a condition that prevented Fonseca from performing the Material Duties of her Own Occupation with reasonable continuity when she stopped working on June 8, 2018. As Standard's neurologist explained in his report, although reports of headaches are clearly present in the records, no side effects associated with the headache medications are documented in the record, and no limitations or restrictions associated with headaches are documented in the record. (STND 2020-00839-000182). This is particularly true given that the important timeframe is what forced Fonseca to stop working on June 8, 2018, and what conditions were disabling before Fonseca's LTD insurance ended.[11] Even if migraine headaches became disabling at some point, the record does not support the conclusion that they alone prevented Fonseca from performing the Material Duties of her Own Occupation with reasonable continuity when she

---

[11] Fonseca does not dispute that under the terms of the Plan her LTD insurance ended on June 26, 2018.

11

stopped working on June 8, 2018. Thus, the Court agrees with Standard's determination that the record does not support the conclusion that any limitations associated with migraines/headaches alone met the Own Occupation Definition of Disability.

### IV.

Again, because Standard determined that the Plan's Preexisting Condition exclusion applied, and because Standard determined that the conditions of psoriatic arthritis, psoriasis, anthralgia/fibromyalgia, alopecia, photosensitivity, and depression were preexisting conditions, it did not examine Fonseca's medical records to determine whether any limitations associated with those conditions, either individually or considered together, might have satisfied the Own Occupation Definition of Disability. Thus, whether the Plan's Preexisting Condition exclusion applies at all is an extremely important determination.

Whether the Plan's Preexisting Condition exclusion applies is based on when Fonseca's LTD coverage became effective. Standard determined that the exclusion applied based on an LTD eligibility date of October 1, 2017. Because Fonseca's onset date of disability was June 8, 2018, which was less than 12 months after October 1, 2017, Standard relied upon the Preexisting Condition exclusion to deny coverage for several of Fonseca's potentially disabling conditions based on the medical records for physician visits during the lookback period.

According to Fonseca, there is no basis in the administrative record for Standard's conclusion that her LTD was October 1, 2017, which was based on a hire date of September 14, 2016. Fonseca points out that there is a reference in the record to September 14, 2016 being a "second hire" date with February 20, 2016 being the "original" hire date. And there is nothing in the record to suggest that Fonseca was not continuously employed since February 20, 2016, which would put her eligibility date at March 1, 2017, and render the Preexisting Condition

12

exclusion inapplicable. Nothing in the record provides any indication as to what "second hire" date means. LTD coverage was noncontributory so the effective date of her LTD coverage turns entirely on when she was hired.

Fonseca's hire date is reflected as February 20, 2016, on the Employer Statement Tab, (STND 2020-00839-001873),[12] and on the Claim Overview document, (STND 2020-00839-000173). The Employment Details section of the Benefits Member View document, (STND 2020-00839-000967), contains the sole reference to a "current" hire date of 9/14/16 but it also includes a reference to an "original" hire date of 2/20/16. This document contains the single reference in the administrative record to September 14, 2016, as the hire date. And as Fonseca points out, this document is not self explanatory as to what the discrepancy in the hire dates means. And it certainly does not preclude the possibility that Fonseca was actually continuously insured under the Plan between February and September 2016. The document appears to the Court to be one either prepared or maintained by Standard and not the employer.

Standard's argument that the employer confirmed in STND 2020-00839-001048 that October 1, 2017 is the effective date of LTD coverage is unpersuasive for two reasons. First, that same document page expressly states that 2/20/16 is the Date of Hire/Date of Membership. Second, and perhaps most important, the terms and conditions of the Plan apply to determine when the eligibility date falls; not the coverage date that someone put into the computer system.

The Court agrees with Fonseca's contention that there is no basis in the record for resolving the discrepancy in the hire date against her. There is likewise no basis in the record for concluding that she was not continuously insured since the February 20, 2016 hire date referenced in several places in the record. The discrepancy is simply not resolvable on the

---

[12] STND 2020-00839-001873 and STND 2020-00839-001048 appear to be the same document.

13

evidence contained in the administrative record. Therefore, the Court cannot conclude based on the administrative record that Standard properly applied the Preexisting Condition exclusion to deny coverage. Even under a discretionary review standard the Court cannot conclude that the determination should be upheld.

## IV.

Having determined that the administrative record does not establish that Standard properly applied the Preexisting Condition exclusion to deny coverage, the Court presumably may just construe the discrepancy against Standard since Standard bears the burden of proof on exclusions. Or the Court may remand Fonseca's claim to Standard in order to have the discrepancy resolved. And of course if it turns out that Fonseca had been continuously insured since the original hire date of February 20, 2016, then the determination will have to be made as to whether, considering her previously excluded conditions, she meets the Own Occupation Definition of Disability. Fonseca would of course prefer to have the Court step in and make all determinations in her favor without the delays inherent in remanding her claim because she stopped working in 2018 and she has already had to appeal her claim twice. Standard, on the other hand, takes the position that it should be afforded the opportunity to make any initial determinations as to disability under its Plan.

Because Fonseca disputed the hire date and lookback period used by Standard for the first time in her briefing and did not challenge it during the administrative process, the Court will not simply construe the factual discrepancy presented by her hire date against Standard. Standard will be allowed to resolve the discrepancy on remand by obtaining clarification from the employer.

On remand Fonseca will be allowed to supplement the medical record in order to establish Own Occupation Disability during the 24 month period ending on December 4, 2020, and then Any Occupation Disability following that date. Standard can likewise update the record. Regardless of whether Standard confirms its determination that the Preexisting Condition exclusion applies, Standard must act <u>expeditiously</u> to analyze the supplemented record to determine whether Fonseca's conditions, especially when considered cumulatively,[13] meet the Plan's definition of disability, especially Own Occupation Disability and if Any Occupation Disability is established.

While Fonseca's claim is proceeding administratively on remand, the Court will close this matter. When the administrative process is complete, either party may move to reopen this matter.

Accordingly;

**IT IS ORDERED** that the **Motion for Judgment on the Pleadings (Rec. Doc. 18)** filed by Lucy Fonseca is denied.[14]

**IT IS FURTHER ORDERED** that the Clerk of Court shall close this matter for administrative reporting purposes.

December 28, 2021

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[13] And of course the effect of migraine headaches must be considered. The Court has determined that migraines considered <u>alone</u> did not establish Own Occupation Disability.

[14] In denying the motion for judgment on the pleadings, the Court does not foreclose the possibility that Fonseca may ultimately be awarded attorney's fees if she prevails. Standard requested that the Court award attorney's fees in its favor. That request is denied. Even if Fonseca does not ultimately prevail, her claim for benefits is not frivolous and that is especially true given the multitude of potentially disabling conditions that she must endure.